**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Sheffield Metals Cleveland, LLC.** ) | **CASE NO. 1:17 CV 1120** |
| ) | |
| Plaintiff, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Kimberly Kevwitch, et al.,** ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

### Introduction

This matter is before the Court upon plaintiff's Motion for Contempt (Doc. 65) and Motion for Costs, Expenses, and Attorney's Fees (Doc. 66). For the following reasons, the Motion for Contempt is DENIED and the Motion for Costs, Expenses, and Attorney's Fees is GRANTED IN PART and DENIED IN PART.

### Facts

Plaintiff Sheffield Metals Cleveland, LLC employed defendant Kimberly Kevwitch from March 4, 2013 until her termination on September 9, 2016. Defendant signed a Nondisclosure and Noncompetition Agreement (NDNC Agreement) as part of her employment. The NDNC Agreement provides in part: "I agree to reimburse the Company, Mazzella, and all subsidiaries of Mazzella for all reasonable expenses, fees and costs incurred in connection with a proceeding to enforce this Agreement, including reasonable attorneys' fees and related costs and expenses."

1

(¶ 7(b)). Upon termination, defendant signed a Confidential Separation Agreement and General Release (the Release). The Release provides in part that "any previous agreements concerning non-competition, non-solicitation, confidentiality, trade secrets or intellectual property will each remain in full force and effect to the extent that they are not inconsistent with this new Agreement." (¶ 12)

After accepting other employment, plaintiff's counsel, Fisher Phillips, wrote letters to defendant in February and March 2017 regarding her obligations under the NDNC Agreement and the Release. Defendant did not respond to the letters. On May 30, 2017, plaintiff filed this Verified Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunctive Relief and Other Causes of Action against defendant through its new counsel, Zashin & Rich. Kevwitch's employer, Drexel Metals, Inc., was also named as a defendant but was subsequently voluntarily dismissed. The Complaint asserted three claims against Kevwitch: misappropriation of trade secrets (under federal and state law) and breach of contract. Ultimately, defendant asserted four counterclaims.

On June 2, 2017, plaintiff and Kevwitch entered into an Agreed Temporary Restraining Order which was thereafter extended. After taking a limited deposition of defendant, the parties filed cross-motions for summary judgment relating to three of the counterclaims. The Court granted the plaintiff's motion, dismissing the three counterclaims. The parties filed cross-motions for summary judgment on the remaining claims and counterclaim after taking defendant's deposition a second time. The Court dismissed the misappropriation of trade secret claims and granted plaintiff's motion as to the breach of contract claim and the counterclaim. The Court ordered briefing on the issues of plaintiff's reasonable attorneys' fees, expenses, and

costs as related to the breach of the contract, and whether defendant should be found to be in contempt for violating the court-ordered TRO.

This matter is now before the Court upon plaintiff's Motion for Contempt and Motion for Costs, Expenses, and Attorney's Fees. The Court will address the Motion for Costs, Expenses, and Attorney's Fees first.

**<u>Discussion</u>**

**(1) Motion for Costs, Expenses, and Attorney's Fees**

**(a) Taxable Costs**

Plaintiff seeks reimbursement of taxable expenses incurred (for which a Bill of Costs was filed) in the amount of $2,000.82 for the filing fee and depositions. Defendant does not oppose this request (Doc. 69 at 11). Those costs are granted.

**(b) Non-Taxable Expenses and Costs**

Plaintiff seeks non-taxable expenses and costs in the amount of $2,895.57 for parking, travel, service of summons, and copying. Defendant objects to the travel expenses (in the amount of $1,555.79) incurred in connection with the taking of defendant's second deposition which the parties had agreed would be taken by telephone. Otherwise, defendant does not object to the remaining expenses sought in the amount of $1,339.78.

As this Court determined in a previous Order (Doc. 44), the parties had agreed that the deposition was to take place telephonically and plaintiff's counsel was not entitled to reimbursement of the fees and costs incurred with the voluntary travel for the deposition. Therefore, non-taxable expenses and costs are awarded in the amount of $1,339.78.

**(c) Attorneys' Fees**

3

Plaintiff seeks reimbursement of attorneys' fees in the amount of $155,904.00 for services rendered by Zashin & Rich Co., L.P.A and $7,852.50 for services rendered by Fisher Phillips for a total of $163,756.50.

"Attorney fees are generally not recoverable as costs or damages unless expressly allowed by statute, court rule, contract, or a common-law exception. However, contractual provisions obligating the losing party to pay reasonable attorney fees are generally valid and judicially enforceable under the same standard as other contractual provisions." *Farley v. Eaton Corporation*, 697 Fed.Appx. 450 (6th Cir. 2017)  The NDNC Agreement states in relevant part: "I agree to reimburse the Company, Mazzella, and all subsidiaries of Mazzella for all reasonable expenses, fees and costs incurred in connection with a proceeding to enforce this Agreement, including reasonable attorneys' fees and related costs and expenses."  (Agreement at ¶ 7(b)). Where it has been demonstrated that plaintiff is entitled to an award of attorneys' fees pursuant to the NDNC Agreement, the Court "must determine whether the requested fees are reasonable." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (prevailing party has burden of proving reasonableness of fees)).

As plaintiff points out, the Sixth Circuit has set out the methodology for determining a reasonable fee award:

> A starting point is to calculate 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' (This is known as the 'lodestar' calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the 'result obtained.' This involves two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'

*Hescott v. City of Saginaw*, 757 F.3d 518 (6th Cir 2014 (citing *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir.1994)).

The Sixth Circuit has further noted that "[t]he factors which a district court may consider, either in determining the basic lodestar fee and/or making adjustments thereto, include the twelve listed in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir.1974)." *Segovia v. Montgomery County, Tenn.,* 593 Fed.Appx. 488 (6th cir. 2014). Following are the twelve factors:

> (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*

Plaintiff submits the declarations of attorneys Stephen S. Zashin and David A. Posner. Zashin states plaintiff originally retained the law firm of Fisher Phillips which did preliminary work and sent the two letters to defendant regarding the NDNC Agreement. That law firm billed plaintiff in the amount of $7,852.50. Once Zashin & Rich took over, Zashin (a co-managing partner of the firm), Patrick Watts (a partner-level attorney), Andrew Cleves (as associate-level attorney), Jessica Ziska (an associate-level attorney), and Zachary Humphrey (a litigation paralegal) performed work on the case which included filing the case and the temporary restraining order, mediation attempts, two depositions of defendant, paper discovery, and two summary judgment briefings. Additionally, the case involved review of documents,

5

development of strategy, preparation of correspondence, and communication with the client. The total lodestar calculation of Zashin & Rich's attorneys' fees totaled $155,904.00 which included 55.6 hours spent by Cleves (at a rate of $240.00 per hour) amounting to $13,344.00; three hours spent by Ziska (at a rate of $230.00 per hour) amounting to $690.00; 293.10 hours spent by Watts (at a rate of $350.00 per hour) amounting to $102,585.00; 81 hours spent by Zashin (at a rate of $475.00 per hour) amounting to $38,475.00; and 5.4 hours spent by Humphrey (at a rate of $150.00 per hour) amounting to $810.00. Zashin attaches a time and activities chart (Ex. B) which he states identifies in chronological order a detailed description of the work performed and time spent on each task recorded in increments of tenths of an hour.

Posner, who is a partner at Baker Hostetler, states that the hourly rates charged by the attorneys above are reasonable based upon the current market billing rates for attorneys with their level of experience. He also states that upon review, the total number of hours expended and the hours listed for specific tasks appear to be reasonable and typically necessary in a case of this nature, length, and disposition.

Defendant opposes the request for attorneys' fees in total or, alternatively, seeks a reduction in the fees amount. Defendant argues that considering the "result obtained" in this case, plaintiff only obtained a limited result, i.e., it merely proved a technical breach of the NDNC Agreement but failed to prove any damages other than a right to recover the fees and costs. Like a § 1983 plaintiff who only recovers nominal damages and so is not entitled to

attorneys' fees[1], defendant maintains that plaintiff should recover zero in attorneys' fees. Alternatively, defendant contends that the fees request should be reduced by at least 50% given that plaintiff failed on its claim for misappropriation of trade secrets entirely and, as discussed above, failed to prove that it is entitled to any monetary relief attributed to actual harm or injury it incurred as a result of the breach of contract. Additionally, defendant points out that ¶ 7(b) of the NDNC Agreement, set forth above, requires that to be reimbursed, expenses and fees must be 1) reasonable, 2) incurred by Sheffield, Mazzella, or Mazzella subsidiaries, and 3) be connected with a proceeding to enforce the Agreement. Defendant maintains that many of the items listed on plaintiff's time and activities chart, as discussed immediately below, do not meet these criteria.

Defendant notes that the Fisher Phillips invoices that plaintiff submits are billed to Liberty International Underwriters (an insurance company) and not to plaintiff. Defendant asserts that it is likewise probable that the attorneys' fees billed by Zashin & Rich also were billed to the insurance company as evidenced by the fact that the Liberty claims specialist's name is referenced in numerous of Zashin's emails and plaintiff does not provide a bill of services from Zashin & Rich to a Sheffield company. Thus, defendant maintains that plaintiff has not shown that the fees were actually incurred by Sheffield.

Defendant also asserts that because ¶ 7(b) covers only fees "incurred in connection with a proceeding to enforce" the Agreement, plaintiff's fees in defending the counterclaims are not

---

[1] Defendant cites to *Farrar v. Hobby*, 506 U.S. 103 (1992), wherein the court found that a civil rights plaintiff who only recovered nominal damages of $1.00 on a claim of $17 million was not entitled to an attorney fee award.

7

reimbursable. Items relating to the defense of the counterclaims include briefing on the original summary judgment motion and the taking of defendant's first deposition, as well as related pleadings, correspondence, and legal research. In all, defendant posits that the fees listed on plaintiff's chart relating to these items amount to $21,532.50. Nor, defendant asserts, is plaintiff entitled to reimbursement for attorneys' fees related to its claims against Drexel Metals, which was originally named as a defendant, because these fees were not "incurred in connection with a proceeding to enforce" the Agreement. Defendant asserts that these fees amount to $2,485.00 and include plaintiff's communications and settlement negotiations with Drexel's counsel, related research, and the dismissal of that party.

Defendant further argues that the claimed attorneys' fees should be reduced by 50% overall given that plaintiff has not provided enough information in its activities chart to determine whether each time entry is related to enforcement of the NDNC Agreement or was related, instead, to claims against Drexel, Kevwitch's counterclaims, or other unrelated issues such as Kevwitch's EEOC discrimination charge. Defendant highlights entries on the activities chart that it believes are communications with unrelated third parties or communications with Liberty (the insurance company), and entries which it considers so vague as to be impossible to determine whether they are related to enforcement of the Agreement. These entries total $10,412.00.

Finally, defendant contends that plaintiff should not be reimbursed for attorneys' fees associated with counsel's travel to Kevwitch's second deposition and the related briefing on the motion for sanctions which plaintiff filed after defendant re-scheduled the deposition at the last minute. Defendant points out that this Court denied sanctions because the parties had agreed to

take the deposition telephonically. Defendant notes that the attorneys' fees sought concerning this issue amount to $6,460.00.

For the following reasons, this Court finds that plaintiff did have to enforce the Agreement and is, therefore, entitled to attorneys' fees. As discussed below, however, applying the required methodology, a reasonable fee award does not include the entire amount sought.

As an initial matter, the Court addresses some of defendant's assertions which are not persuasive. Defendant asserts that plaintiff has not shown that Sheffield actually incurred the fees. But, with its reply brief, plaintiff submits the declaration of Zashin & Rich's office manager who states that the law firm billed Sheffield for the services it provided and that, to date, Sheffield has paid $122,201.97 in this matter. Time expended in the months of February 2018 through April 2018 is unpaid or not yet billed. (Gwen Johnston decl.) Nor, plaintiff shows, have courts declined to award attorney's fees where the fees were paid by a third party such as an insurance company. Thus, defendant's contentions that plaintiff is not entitled to reimbursement of fees "not billed to Sheffield" are not well-taken. Furthermore, the Court agrees with plaintiff that the fees related to the counterclaims and the claim against Drexel Metals are subject to reimbursement as they were incurred "in connection with a proceeding to enforce" the Agreement. Plaintiff's claim against Drexel, defendant's new employer, and the defense of the counterclaims all arose in connection with the proceeding to enforce the Agreement. Finally, the Court finds the time and activities chart to be reasonably detailed.

That said, the Court finds that the fees must be reduced somewhat. The Court agrees with defendant that the fees associated with counsel's travel to attend defendant's second deposition were "unnecessary." As discussed above, the Court has already determined that plaintiff's

9

decision to travel for the second deposition was voluntary and that sanctions were not warranted for the rescheduling of the deposition. Thus, the Court will not allow attorneys' fees for these "unnecessary hours." As plaintiff does not dispute the amount given by defendant, the Court will reduce the fee award by $6,460.00. This would reduce the total amount of fees sought to $157,296.50.

Additionally, the Court agrees with defendant that "the resulting sum should be adjusted to reflect the 'result obtained.' " *Hescott, supra.* The two letters written by Fisher Phillips to defendant prior to the filing of the Complaint were primarily concerned with defendant's obligations regarding using or disclosing Sheffield's trade secrets and confidential/proprietary information now that defendant had joined Drexel Metals. Only the second letter additionally noted that Sheffield had learned that defendant had contacted a customer of Sheffield and that she had disparaged Sheffield on Facebook, thereby further violating her NDNC Agreement. Plaintiff's Complaint alleged misappropriation of trade secrets under federal and state law. However, the Court granted summary judgment to defendant on these claims resulting in 50% of the Complaint being dismissed. Moreover, as to the breach of contract claim, defendant is correct that while plaintiff established that defendant breached the NDNC Agreement in several ways, plaintiff only addressed damages in the form of costs in enforcing the contract. There was no evidence of lost business.

The Court determines that a reduction in the amount of 50% is appropriate and commensurate to the outcome. Accordingly, the fee award will be reduced by $78,648.25 (i.e., 50% of $157,296.50) for a total fee amount of $78,648.25.

**(2) Motion for Contempt**

On June 2, 2017, the Court entered an Agreed Temporary Restraining Order wherein plaintiff and defendant Kevwitch agreed to the following:

1. Defendant Kevwitch is prohibited from soliciting, or encouraging any current customer to terminate their relationship with Plaintiff;

2. Defendant Kevwitch is prohibited from using or disclosing any of Plaintiff's trade secrets or confidential information;

3. Defendant Kevwitch is prohibited from engaging in any other conduct that would otherwise violate the *Kevwitch Agreement* or *Kevwitch Release* as those terms are defined in the Complaint.

This temporary restraining order will go into effect upon execution of this Order by the Court and will remain in effect for fourteen days thereafter; i.e., until June 15, 2017.

The Court may punish violations of this order by contempt.

(Doc. 11). The TRO was extended by agreement of the parties and ultimately expired on March 29, 2018. (Doc. 40)

Plaintiff argues that defendant failed to abide by the TRO and requests that the Court find her in contempt and sanction her by ordering that she pay the attorneys' fees associated with this motion and related briefing, as well as ordering her to disgorge any ill-gotten gains or wages during the time period that she worked in violation of the TRO.

Plaintiff points out that contempt may be either criminal or civil. Criminal contempt, punishable by fine or imprisonment, is governed by statute and requires that a party willfully disobey a court order of which the party had notice. 18 U.S.C. § 401. In a civil contempt proceeding, it must be shown by clear and convincing evidence that a party violated a court order

11

requiring him to perform or refrain from performing. Willfulness is not a required element. *Natl. Labor Relations Bd. v. Cincinnati Bronze, Inc.,* 829 F. 2d 585 (6th Cir. 1987).

Plaintiff maintains that defendant violated the TRO by becoming employed by Metal Sales, a competitor of plaintiff within 100 miles, and soliciting plaintiff's clients for their business on behalf of Metal Sales. Defendant argues that she did not violate the TRO when she started working for Metal Sales. Additionally, defendant submits her declaration stating that she did not contact plaintiff's customers for the purpose of soliciting their business on behalf of Metal Sales. (Doc. 68 Ex. B)

Plaintiff contends that defendant violated paragraph three of the TRO which encompasses the one year post employment restrictions in paragraph 6 of the NDNC Agreement. But, defendant contests plaintiff's argument that the one year time period was still in effect when defendant began working for Metal Sales. For the following reasons, the Court agrees with defendant and, therefore, does not find that she violated the TRO, willfully or not.

Defendant was terminated by plaintiff on September 9, 2016. Thus, under paragraph 6 of the NDNC Agreement, the one year period following the end of her employment with plaintiff would have expired on September 9, 2017. Defendant began working for Metal Sales Manufacturing Corporation (Metal Sales) on December 4, 2017. (deft. decl.) Plaintiff asserts that the one year period must be extended by the time that defendant was in breach of the Agreement while she was working for Drexel Metals. According to her deposition, she began her employment with Drexel Metals on February 6 or 7, 2017. She was terminated by Drexel on June 13, 2017. Therefore, about 126 or 127 days elapsed and, according to plaintiff, would have to be added to the one year period extending the non-compete provision of paragraph 6. This

12

would extend the period to about January 14, 2018. However, to extend the period, plaintiff relies on paragraph 7(c) of the NDNC Agreement which states:

> If I breach the covenants in Section 5, the particular covenant that I breached shall be extended, on the same terms and conditions, for an additional period of time equal to the time that elapsed from the start of the breach to its termination.

Plaintiff acknowledges that there are no covenants in "Section 5" and assumes that paragraph 7(c) refers to the non-compete provisions of paragraph 6. However, paragraph 4 of the NDNC also contains covenants (agreements regarding trade secrets). Given the ambiguity, the Court will not find that the one year period was extended. Furthermore, even assuming the non-compete provision was extended, the Court declines to award further attorneys' fees to plaintiff or force defendant to disgorge her earnings given that the Court has already ordered attorneys' fees.

For these reasons, plaintiff's Motion for Contempt is denied.

### **Conclusion**

For the foregoing reasons, plaintiff's Motion for Contempt is denied and plaintiff's Motion for Costs, Expenses, and Attorney's Fees is granted in part and denied in part as follows: granted as to taxable costs in the amount of $2,000.82, non-taxable expenses and costs in the amount of $1339.78, and attorneys' fees in the amount of $78,648.25; all other requests are denied.

IT IS SO ORDERED.

                                                /s/ Patricia A. Gaughan
                                                PATRICIA A. GAUGHAN
                                                United States District Court
                                                Chief Judge

Dated: 5/23/18